Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk for defendant-employer was Liberty Mutual Insurance Company at all relevant times herein.
4. The parties stipulated that plaintiff sustained an injury by accident on 4 September 1996.
5. The parties stipulated that plaintiff continued to work for defendant-employer at same or greater average weekly wage from 4 September 1996 until 25 March 1997.
6. The parties stipulated that plaintiff's last day of work with defendant-employer was 25 March 1997.
7. Plaintiff's average weekly wage was $441.21, yielding a compensation rate of $294.15 per the Industrial Commission Form 22 State of Days Worked and Earnings of Injured Employee.
8. The parties stipulated to plaintiff's medical records from Mark S. Jasmine, M.D. and from Raymond C. Sweet, M.D.
9. The issue presented is:
 a) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act as a result of her admittedly compensable injury by accident of 4 September 1996?
***********
Based on the credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 51 years old and employed by defendant-employer as an assistant manager. Plaintiff's job duties included making deposits, receiving freight, unloading trucks, stocking shelves, and opening and closing the store. Plaintiff's prior work history included employment with Wal-Mart as a district manager for ten years.
2. On 4 September 1996, plaintiff was working alone in the Kannapolis Revco store, when she suffered an admittedly compensable injury by accident to her back while lifting a box.
3. Plaintiff presented to Mark A. Jasmine, M.D., an orthopaedist, at the earliest appointment available on 6 September 1996. Plaintiff reported being injured while unloading a truck by herself at work and that while lifting the box, she felt an electrical type sensation in her neck, arms, back, legs, hands, and feet.
4. Dr. Jasmine treated plaintiff conservatively and ordered plaintiff into physical therapy. Dr. Jasmine believed plaintiff's symptoms were consistent with radiculopathy.
5. On 12 December 1996, plaintiff presented to Dr. Jasmine and reported that although she continued to have some low back pain, she believed the physical therapy had helped her symptoms. Dr. Jasmine released plaintiff on an "as needed" basis.
6. However, on 7 February 1997, plaintiff returned to Dr. Jasmine complaining of worsening low back pain with radiation down her left leg to her ankle. Plaintiff reported to Dr. Jasmine that she had not re-injured herself between 12 December 1996 and 7 February 1997. Dr. Jasmine ordered an MRI scan.
7. The MRI revealed a large herniated disc at L4-5, and plaintiff was treated with a series of epidural steroid injections. However, plaintiff's pain continued to worsen, including progressive motor weakness and bladder incontinence.
8. Dr. Jasmine took the plaintiff out of work on 25 March 1997 and recommended surgery to relieve plaintiff's herniated disc.
9. At defendant-carrier's request, plaintiff attended an Independent Medical Evaluation with Raymond Sweet, M.D., a neurosurgeon. Dr. Sweet examined plaintiff on 22 April 1997 and diagnosed a large herniated disc at L4-5 on the left. Dr. Sweet recommended that plaintiff have immediate surgery to relieve the compression of the nerve root. Surgery was performed on 24 April 1997.
10. Following her surgery, plaintiff has continued to treat with Dr. Sweet and has continued to experience significant leg pain and weakness. Plaintiff now walks with a cane.
11. Notwithstanding plaintiff's significant leg pain and weakness, on 3 November 1997, Dr. Sweet determined that plaintiff was at maximum medical improvement and gave her a permanent partial disability rating of 15% to her back. Dr. Sweet further determined that although the plaintiff could not return to her job with defendant, she could perform light office type work with restrictions of no sitting or standing more than 30 minutes, no lifting more than 10 pounds, and no climbing or crawling. However, despite Dr. Sweet's determination that plaintiff had reached maximum medical improvement, he continues to treat plaintiff every two to three months. Dr. Sweet opined that even though plaintiff has reached maximum medical improvement and has been assigned a permanent partial disability rating to her back, she still needs ongoing medical treatment, including long term medicals and physician visits every two to three months for renewal of her medication.
12. Both Dr. Jasmine and Dr. Sweet opined that plaintiff's herniated disc was caused by her admittedly compensable injury by accident of 4 September 1996.
13. At the hearing before the deputy commissioner, plaintiff testified that she had not sought employment because she is still incontinent and on some days her pain is so intense that she cannot get out of bed. Plaintiff further testified that she has trouble caring for herself and had to move in with a friend for assistance. In addition to treatment for her pain, plaintiff has been treated for depression, which she did not have prior to 4 September 1996.
14. The competent evidence in the record establishes that plaintiff's herniated disc and subsequent disability is causally related to her 4 September 1996 admittedly compensable injury by accident.
15. The competent evidence in the record further establishes that plaintiff's admittedly compensable injury by accident prevents her from returning to work in her prior employment with defendant and that coupled with her age and limited physical capabilities, it has been and continues to be futile for her to seek employment without vocational rehabilitation assistance.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the course of her employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on 4 September 1996. G.S. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to total disability at a compensable rate of $294.15 per week beginning 26 March 1997 and continuing until the plaintiff returns to work or until a formal hearing by the Commission. G.S. § 97-29.
3. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, as a result of her admittedly compensable injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief and tends to lessen plaintiff's period of disability. G.S. § 97-25; G.S. §97-19.
4. Plaintiff is entitled to have defendants provide vocational rehabilitation services and plaintiff shall cooperate with the same. G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to the plaintiff a compensation rate of $294.15 per week for total disability benefits for her admittedly compensable injury by accident of 4 September 1996 until plaintiff returns to work or until a formal hearing by the Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum subject to attorney's fees hereinafter provided.
2. Defendants shall provide vocational rehabilitation services to plaintiff and plaintiff shall cooperate with the same.
3. Defendants shall pay for all medical expenses incurred, or to be incurred, as a result of plaintiff's admittedly compensable injury resulting from the accident on 4 September 1996, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's disability.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that the counsel for plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendants.
5. Defendants shall pay as part of cost pursuant to G.S. §97-88, plaintiff's attorney's fees in the amount of $500.00 for defending this appeal to the Full Commission. This fee is in addition to the fee awarded as a percentage of the compensation to which plaintiff is entitled.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER